IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
*Southern Division*

| | |
|---|---|
| **CALVIN C. MURRAY,** | * |
| Plaintiff, | * |
| v. | *     Case No.: GJH-20-0024 |
| | * |
| **WARDEN WALTER WEST,** *et al.*, | |
| | * |
| Defendants. | |
| | * |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

**MEMORANDUM OPINION**

While incarcerated at Eastern Correctional Institution ("ECI") in Westover, Maryland, self-represented plaintiff Calvin C. Murray filed this 42 U.S.C. § 1983 action against then-Warden Walter West, Lieutenant Vanessa Jones, Sergeant Takiya Barkley, Sergeant Timothy Norkelun, Sergeant Rownite Stevens (collectively, "ECI Defendants"),[1] C.O. Washington, and Dr. Clem. ECF No. 1. The Complaint, which Plaintiff later supplemented, alleges that Defendants disregarded his health and safety when they allowed him to remain in a cell with a leaky ceiling for several days even after he suffered a fall while getting down from his bunk. *Id.*; ECF No. 3. Plaintiff seeks injunctive relief and one million dollars in damages. ECF No. 3 at 3.[2]

On January 5, 2021, ECI Defendants filed a Motion to Dismiss or, in the Alternative, Motion for Summary Judgment, ECF No. 21, to which Plaintiff responded, ECF No. 25. Plaintiff also filed a Motion for Appointment of Panel Counsel. ECF No. 26.

This Court deems a hearing unnecessary. *See* Local Rule 105.6 (D. Md. 2021).

---

[1] The Clerk shall be directed to amend the docket to reflect ECI Defendants' full and correct names.

[2] Pin cites to documents filed on the Court's electronic filing system (CM/ECF) refer to the page numbers generated by that system.

Defendants Washington and Clem were not served with the Complaint, and the Court dismisses Plaintiff's claims against them without prejudice. For the reasons set forth below, ECI Defendants' Motion, construed as one for summary judgment, shall be granted, and Plaintiff's Motion for Appointment of Panel Counsel shall be denied.

## I.     BACKGROUND

### A.     Factual Background

#### 1.     Plaintiff Murray's Allegations

Plaintiff claims that, in November 2019, he informed Defendant Jones about a leak in his cell at ECI and "complained that it was inhumane . . . and dangerous" to leave him there. ECF No. 1 at 1. Plaintiff was told that maintenance was not available at the time. *Id.* Plaintiff incurred damage to his property until the issue was resolved approximately four days later. *Id.*

On December 20, 2019, the leak reoccurred. *Id.* at 1–2. Plaintiff informed Defendants Barkley, Norkelun, and Washington about the reoccurrence. *Id.* Defendants told him that maintenance could not be reached. *Id.* At about 6:13 a.m. on December 21, 2019, Plaintiff "stepped off [his] bunk onto the plastic chair and slipped and fell into the standing water on the floor[,]" where he hit his head, neck, and back, and "went unconscious for a minute or so." *Id.* at 2. According to Plaintiff, calls to correctional officers were ignored and it was not until 7:30 a.m. that Defendant Stevens called the medical unit, under the direction of C.O. Merchant. *Id.*; ECF No. 3 at 2. Plaintiff walked alone to the medical unit, where a nurse examined him and called Defendant Clem, who in turn directed Plaintiff to take Motrin for the pain. ECF No. 1 at 2. Plaintiff states that he was sent back to his cell without receiving x-rays, an MRI, or "sufficient pain meds." *Id.* Plaintiff claims that the leak eventually stopped despite not being repaired, but he remained housed in the cell that was flooded for six days. ECF No. 3 at 2.

## 2. ECI Defendants' Response

According to a Work Order submitted by ECI Defendants, the first leak in Plaintiff's cell occurred on November 7, 2019. ECF No. 21-2 at 35. The maintenance staff assessed the problem and ordered parts the following day, then completed the repairs on December 11, 2019. *Id.*

On December 20, 2019, another leak occurred in Plaintiff's cell and the maintenance staff was notified. ECF No. 21-2 at 36. At 12:37 p.m. that day, Plaintiff reported to the medical unit with complaints of chronic back pain that had "been worsening over a few months[.]" ECF No. 21-4 at 3–5. He was given ibuprofen and muscle rub, directed to follow an exercise program, referred to a provider, and a back support was ordered. *Id.* at 6–7.

After ECI staff was notified of the December 20, 2019 leak, Defendant Norkelun allowed Plaintiff and his cellmate to rearrange their property to avoid the leaking water and gave them access to custodial supplies as well as extra laundry services. ECF No. 21-2 at 29; ECF No. 21-3 ¶ 4. Defendant Norkelun also spoke with an inmate maintenance worker in an attempt to have the leak repaired, but the inmate worker indicated that he was unable to fix it himself. ECF No. 21-2 at 29; ECF No. 21-3 ¶ 3. ECI maintenance staff fixed the leak four days later. ECF No. 21-2 at 27. The property officer was notified of the incident, but Plaintiff did not need his property replaced. *Id.* According to Defendant Norkelun, neither Plaintiff nor his cellmate requested to have a cell change. ECF No. 21-3 ¶¶ 5–6.

On December 21, 2019, Plaintiff fell in his cell. ECF No. 1 at 1–2. Plaintiff was sent to the medical unit, where he was evaluated by Keishara Wood, RN. *See* ECF No. 21-2 at 26–27; ECF No. 21-4 at 7–12. Nurse Wood noted that Plaintiff walked to medical unassisted but was limping. ECF No. 21-4 at 11. Plaintiff had limited range of motion in his lower extremities and his eyes were not reactive to light. *Id.* Upon examination, there was no redness or tenderness on

3

his back. *Id.* Nurse Wood notified Dr. Clem, ordered 600mg ibuprofen for pain, and directed Plaintiff to return for another evaluation the next day. *Id.* During Plaintiff's medical visit on December 22, 2019, Nurse Wood observed no limping, no signs of distress, no bruising, and normal range of motion in both upper and lower extremities. *Id.* at 13. Plaintiff received x-rays on January 8, 2020, but they did not indicate any problems. *Id.* at 32.

On January 23, 2020, Plaintiff returned to the medical unit with complaints of dizziness and headache from his December fall. *Id.* at 30. Upon examination, Dr. Paul Matera noted no dizziness but observed Plaintiff's lumbar spine had a muscle spasm and mildly reduced range of motion. *Id.* at 32–36. Plaintiff was offered, but declined, an order for use of a bottom bunk and stated that he did not want "patches" or muscle rub. *Id.* at 32. He was prescribed Naproxen for pain and directed to perform stretching exercises. *Id.*

### B.     Procedural Background

On December 28, 2019, Plaintiff filed a request for administrative remedy procedure ("ARP") claiming that his cell had a leak and inches of standing water and that he fell when he "stepped off [his] bunk onto the chair . . . because water was in the chair from the ceiling." ECF No. 21-2 at 3–4. Plaintiff was directed to resubmit his ARP on a new form, which he did on January 3, 2020. *Id.* at 3, 8–9. ECI staff investigated the incident, obtaining statements from Defendant Barkley, Defendant Norkelun, C.O. Merchant, Defendant Stevens, and Nurse Wood. *Id.* at 12–17. A report was finalized on April 9, 2020, and the Warden subsequently dismissed Plaintiff's ARP after finding that there was "not enough evidence to substantiate [Plaintiff's] claim that [his] fall was due to staff negligence." *Id.* at 8, 12. Warden West concluded that Plaintiff slipped and fell while moving down from the top bunk and that he was immediately offered medical attention once staff became aware of the fall. *Id.* at 8. On June 12, 2020, Plaintiff

acknowledged receipt of the Warden's decision and promptly appealed. *Id.* at 2, 6–7. On July 20, 2020, the Commissioner of Correction dismissed the appeal, finding that Plaintiff did not provide evidence to substantiate the claim that his fall was due to staff negligence." *Id.* at 5.

Plaintiff filed the instant action in this Court on January 2, 2020, ECF No. 1, and supplemented his Complaint on January 23, 2020, ECF No. 3. Also on January 23, 2020, Plaintiff filed a Motion for Leave to Proceed *in forma pauperis*, ECF No. 4, which this Court granted on September 2, 2020, ECF No. 10. ECI Defendants filed their Motion to Dismiss or, in the Alternative, for Summary Judgment, on January 5, 2021, ECF No. 21, which Plaintiff opposed on January 28, 2020, ECF No. 25. Plaintiff filed a Motion for Appointment of Panel Counsel on January 28, 2021. ECF No. 26.

## II. STANDARDS OF REVIEW

To survive a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), the factual allegations of a complaint "must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)[.]" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted). "To satisfy this standard, a plaintiff need not 'forecast' evidence sufficient to prove the elements of the claim. . . . However, the complaint must allege sufficient facts to establish those elements." *Walters v. McMahen*, 684 F.3d 435, 439 (4th Cir. 2012) (citation omitted).

ECI Defendants' Motion is styled as a motion to dismiss under Fed. R. Civ. P. 12(b)(6) or, in the alternative, for summary judgment under Fed. R. Civ. P. 56. ECF No. 21. Motions styled in this manner implicate the Court's discretion under Rule 12(d) of the Federal Rules of Civil Procedure. *See Kensington Volunteer Fire Dep't, Inc. v. Montgomery Cnty.*, 788 F. Supp.

2d 431, 436–37 (D. Md. 2011). Conversion of a motion to dismiss to one for summary judgment under Rule 12(d) is permissible where plaintiff has "actual notice" that the motion may be disposed of as one for summary judgment. *See Laughlin v. Metro. Washington Airports Auth.*, 149 F.3d 253, 260–61 (4th Cir. 1998). When the movant expressly captions its motion "in the alternative" as one for summary judgment and submits matters outside the pleadings for the Court's consideration, the parties are deemed to be on notice that conversion under Rule 12(d) may occur; the Court "does not have an obligation to notify parties of the obvious." *Laughlin*, 149 F.3d at 261.

Because ECI Defendants' Motion is titled as a motion to dismiss, or in the alternative, for summary judgment, Plaintiff was on notice that the Court could treat it as one for summary judgment and rule on that basis. Thus, the Court will review Plaintiff's claims under the Rule 56(a) standard and will consider the exhibits and declaration filed in support of the dispositive motion.[3]

Rule 56(a) provides that summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A dispute is genuine if 'a reasonable jury could return a

---

[3] While the Court may rule on a motion for summary judgment prior to commencement of discovery, *see, e.g.*, *Demery v. Extebank Deferred Comp. Plan (B)*, 216 F.3d 283, 286 (2d Cir. 2000), Federal Rule of Civil Procedure 56(d) "mandates that summary judgment be denied when the nonmovant has not had the opportunity to discover information that is essential to his opposition." *Pisano v. Strach*, 743 F.3d 927, 931 (4th Cir. 2014) (internal quotation marks and citation omitted). To obtain Rule 56(d) relief, the non-moving party bears the burden of showing how discovery "could possibly create a genuine issue of material fact sufficient . . . to survive summary judgment, or otherwise affect the court's analysis." *Poindexter v. Mercedes-Benz Credit Corp.*, 792 F.3d 406, 411 (4th Cir. 2015) (internal quotation marks and citation omitted). While Plaintiff's Opposition requests discovery and identifies certain information/materials that he would request if the Court allowed discovery, *see, e.g.*, ECF No. 25 at 1 (requesting "camera footage from the days before [Plaintiff] left [ECI]"); *id.* at 3 (requesting Defendants' "employment records"); *id.* at 3 (requesting video of Plaintiff and his cellmate "throwing out clothing, towels, etc."); *id.* at 4 (requesting "camera footage . . . , prior work history, complaints against them, and any other information that would bring doubt to [Defendants'] testimonies, declarations, affidavits, etc."), Plaintiff has not shown how these materials "could possibly create a genuine issue of material facts sufficient . . . to survive summary judgment[,]" *Poindexter*, 792 F.3d at 411. *See supra* § III.A.

verdict for the nonmoving party.'" *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013) (quoting *Dulaney v. Packaging Corp. of Am.*, 673 F.3d 323, 330 (4th Cir. 2012)). "A fact is material if it 'might affect the outcome of the suit under the governing law.'" *Id.* (quoting *Henry v. Purnell*, 652 F.3d 524, 548 (4th Cir. 2011)). Accordingly, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment[.]" *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986) (emphasis in original). A court must view the evidence in the light most favorable to the nonmoving party, *Tolan v. Cotton*, 572 U.S. 650, 656–57 (2014) (per curiam), and draw all reasonable inferences in that party's favor, *Scott v. Harris*, 550 U.S. 372, 378 (2007); *see also Jacobs v. N.C. Admin. Off. of the Cts.*, 780 F.3d 562, 568–69 (4th Cir. 2015). At the same time, the Court must "prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat v. Balt. Ravens Football Club, Inc.,* 346 F.3d 514, 526 (4th Cir. 2003) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778–79 (4th Cir. 1993)).

The Court is mindful that Plaintiff is a self-represented litigant. A federal court must liberally construe pleadings filed by pro se litigants to allow them to fully develop potentially meritorious cases. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007). But liberal construction does not mean a court can ignore a clear failure in the pleadings to allege facts which set forth a claim. *See Weller v. Dep't of Soc. Servs.*, 901 F.2d 387, 391 (4th Cir. 1990). A court cannot assume the existence of a genuine issue of material fact where none exists. Fed. R. Civ. P. 56(c).

### III. DISCUSSION

#### A. ECI Defendants' Motion for Summary Judgment

While it is not clear from Plaintiff's Complaint, nor from the Supplement to Plaintiff's Complaint, the exact nature of Plaintiff's claims, the Court identifies two possible claims that

Plaintiff may be attempting to allege: (1) an Eighth Amendment claim based on the conditions of Plaintiff's confinement; and (2) a Due Process claim based on damage to Plaintiff's property caused by the leaks. The Court discusses both potential claims below.

1.      **Eighth Amendment Claim**

Plaintiff's Eighth Amendment claim cannot not survive ECI Defendants' Motion to Dismiss or, in the Alternative, for Summary Judgment.

The Eighth Amendment to the United States Constitution proscribes "unnecessary and wanton infliction of pain" by virtue of its guarantee against cruel and unusual punishment. *Gregg v. Georgia,* 428 U.S. 153, 173 (1976). However, the Amendment "proscribes more than physically barbarous punishments." *Estelle v. Gamble*, 429 U.S. 97, 102 (1976). It also embodies the "concepts of dignity, civilized standards, humanity, and decency[.]" *Id.* at 102 (internal quotation marks and citation omitted). Thus, the Eighth Amendment "protects inmates from inhumane treatment and conditions while imprisoned[,]" *Williams v. Benjamin*, 77 F.3d 756, 761 (4th Cir. 1996), and imposes "certain basic duties on prison officials," such as requiring "reasonable measures to guarantee the safety of the inmates[,]" *Raynor v. Pugh*, 817 F.3d 123, 127 (4th Cir. 2016).

Conditions which "deprive inmates of the minimal civilized measure of life's necessities" may amount to cruel and unusual punishment. *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). In order to establish an Eighth Amendment claim based on a prisoner's conditions of confinement, the prisoner must prove two elements: (1) that "the deprivation of a basic human need was *objectively* sufficiently serious[;]" and (2) "that *subjectively* the officials acted with a sufficiently culpable state of mind." *Shakka v. Smith*, 71 F.3d 162, 166 (4th Cir. 1995) (emphasis in original) (internal quotation marks, brackets, and citations omitted). "These requirements spring from the

text of the amendment itself; absent intentionality, a condition imposed on an inmate cannot properly be called 'punishment,' and absent severity, such punishment cannot be called 'cruel and unusual.'" *Iko v. Shreve*, 535 F.3d 225, 238 (4th Cir. 2008) (citing *Wilson v. Seiter*, 501 U.S. 294, 298–300 (1991)).

### a. Sufficiently Serious Deprivation

As to the first element, "[o]nly extreme deprivations are adequate to satisfy the objective component of an Eighth Amendment claim regarding conditions of confinement." *De'Lonta v. Angelone*, 330 F.3d 630, 634 (4th Cir. 2003). "Demonstration of an extreme deprivation proscribed by the Eighth Amendment requires proof of a serious or significant physical or emotional injury resulting from the challenged conditions." *Pevia v. Nines*, No. ELH-18-3900, 2020 WL 374450, at *10 (D. Md. Jan. 23, 2020) (quoting *Odom v. S.C. Dep't of Corr.*, 349 F.3d 765, 770 (4th Cir. 2003)).

A review of the Fourth Circuit's opinion in *Beverati v. Smith*, 120 F.3d 500 (4th Cir. 1997), is helpful in determining whether Plaintiff has established a *sufficiently serious* deprivation of a basic human need. In *Beverati*, the plaintiffs claimed that (1) their cells were intolerably hot; (2) when they first arrived in the segregation unit their cells were infested with vermin, smeared with human feces and urine, and flooded with water from the toilet on the floor above; (3) they were forced to clean the cells with their own clothing and shampoo; (4) they received only small portions of cold food; (5) they only infrequently received clean clothing, linen, and bedding; (6) they were only permitted to leave their cells three to four times per week; and (7) they were denied recreation, educational, and religious services. *Beverati*, 120 F.3d at 504. The Fourth Circuit accepted these allegations as true for the purposes of the opinion but nevertheless found that the plaintiffs had failed to establish that the defendants had violated the

plaintiffs' constitutional rights by exposing them to these conditions for six months.[4] *Id.*

Here, Plaintiff claims that ECI staff were deliberately indifferent in failing to remove him from his cell, which had a leaky ceiling that caused standing water to pool on the floor. ECF No. 3 at 2, 5. He claims that as a result of being kept in those conditions for multiple days, he slipped on a wet chair and fell to the ground, sustaining injuries to his head and back. ECF No. 1 at 2. While "[t]he conditions described by Plaintiff are certainly unpleasant, and do not paint a picture of a particularly well-maintained or efficiently run jail[,]" *Whitmore v. W. Reg'l Jail*, No. 3:18-cv-01483, 2019 WL 3756396, at *6 (S.D.W. Va. July 19, 2019), *report and recommendation adopted*, No, CV 3:18-1483, 2019 WL 3759806 (S.D.W. Ca. Aug. 7, 2019) (finding no Eighth Amendment violation where "for approximately two to three weeks [the plaintiff] was denied the opportunity to participate in recreation or gym time; was forced to wash his own clothes in the sink; was often provided uncooked and inedible food; was placed in a cell which contained mold and iron stains; and was housed next to inmates who would constantly urinate on the floors and smear their own feces on the walls" and where, "[a]t one point, [the p]laintiff's cell became flooded with water, fecal matter, trash and urine and was not cleaned 'for 6 hours or more'"), Plaintiff's allegations, even taken as true, do not establish an "extreme deprivation" sufficient "to satisfy the objective component of an Eighth Amendment claim regarding conditions of

---

[4] In *Beverati*, the Fourth Circuit considered the plaintiffs' claims in light of the Fourteenth Amendment to the United States Constitution, which requires a court to consider whether the conditions of confinement represented "an atypical and significant hardship" as compared to those experiences which are "ordinary incident of prison life." *Beverati*, 120 F.3d at 503. However, courts in the Fourth Circuit, including this one, have found that "the Fourteenth Amendment analysis contained in *Beverati* is equally applicable to Eight Amendment claims, as the question of whether the conditions . . . represent an 'atypical and significant hardship' is similar to the question of whether the conditions represent an objectively serious deprivation; indeed the latter question provides a more difficult evidentiary hurdle for a prisoner." *Whitmore v. W. Reg'l Jail,* No. 3:18-cv-01483, 2019 WL 3756396, at *7 (S.D.W. Va. July 19, 2019) (collecting cases); *see also Copeland v. Dep't of Pub. Safety & Corr. Servs.*, No. JKB-17-0013, 2017 WL 5187741, at *7 n.5 (D. Md. Nov. 8, 2017) ("Although *Beverati* did not consider an Eighth Amendment challenge, if conditions are not so atypical or burdensome as to trigger due process protections, such conditions could not be so inhumane as to violate the Eighth Amendment.").

confinement[,]" *De'Lonta*, 330 F.3d at 634. *See Resper v. Shearin*, No. PJM-13-3310, 2015 WL 993817, at *1–*2 (D. Md. Mar. 4, 2015) (denying the plaintiff's Eighth Amendment claim alleging, *inter alia*, that prison officials did not take appropriate action after mentally ill inmates caused the plaintiff's cell to become flooded with sewage); *Harris v. FNU Connolly*, No. 5:14-CV-128-FDW, 2016 WL 676468, at *5 (W.D.N.C. Feb. 18, 2016), *aff'd*, 667 F. App'x 408 (4th Cir. 2016) (dismissing claim wherein plaintiff alleged he was held in a cell with a "massive amount of urine, feces, and vomit on the floor and walls" for 30 plus days as "courts have found no constitutional violation in other cases involving similar time periods when the prisoner was allegedly exposed to unsanitary conditions."). The conditions of Plaintiff's confinement in the instant case were far less distasteful than what the Fourth Circuit found to be constitutional in *Beverati*. Moreover, according to the exhibits attached to ECI Defendants' Motion, ECI staff gave Plaintiff the opportunity to rearrange and launder his belongings, ECF No. 21-2 at 29; ECF No. 21-3 ¶ 4, and the leak was repaired in under 7 days, ECF No. 1 at 1 (stating the first leak, in November 2019, lasted for four days); *id.* at 2 (stating the second leak stopped on December 27, 2019, seven days after the leak began); ECF No. 21-2 at 27 (stating the December leak was fixed four days later).

      Additionally, Plaintiff has failed to produce evidence of a serious or significant physical or emotional injury that resulted from the challenged conditions, which is required for Plaintiff's Eighth Amendment claim to survive a motion for summary judgment. Although Plaintiff was limping, had limited range of motion in his lower extremities, and his eyes were not reactive to light on the day he fell, there were no abnormalities observed when he returned for a follow-up evaluation the next day. ECF No. 21-4 at 11, 13. At that time, he was no longer limping, had no signs of distress or bruising, and had normal range of motion in both upper and lower

extremities. *Id.* at 13. During another medical visit a month later, an ECI physician only noted that Plaintiff's "[l]umbar spine has [a] muscle spasm, [and] mildly reduced [range of motion]." *Id.* at 35. However, Plaintiff attributed the pain to an older injury which was allegedly exacerbated by the December fall and another incident with an officer not discussed in this case. *Id.* at 30–32. Plaintiff declined orders for bottom bunk placement and muscle rub. *Id.* at 32.

For the aforementioned reasons, ECI Defendants' Motion is granted with respect to Plaintiff's Eighth Amendment claim.

### b. Sufficiently Culpable State of Mind

As to the second element of an Eighth Amendment conditions of confinement claim, "[t]o establish a sufficiently culpable state of mind, there must be evidence that a known excessive risk of harm to the inmate's health or safety was disregarded." *Cooke v. Dep't of Corr. for Md.*, No. ELH-16-3552, 2017 WL 896863, at *6 (D. Md. Mar. 6, 2017) (citing *Wilson*, 501 U.S. at 298–99. "[T]he test is whether the guards know the plaintiff inmate faces a serious danger to his safety and they could avert the danger easily yet they fail to do so." *Brown v. N.C. Dep't of Corr.*, 612 F.3d 720, 723 (4th Cir. 2010) (internal quotation marks omitted) (quoting *Case v. Ahitow*, 301 F.3d 605, 607 (7th Cir. 2002)).

Plaintiff fails to establish that ECI Defendants acted with a sufficiently culpable state of mind in imposing the complained-of conditions. From the declarations under oath and exhibits filed by ECI Defendants, it is evident that both leaks were reported to maintenance within a day, ECF No. 21-2 at 27, 29, 35–36; ECF No. 21-3 ¶ 3, parts were immediately ordered, ECF No. 21-2 at 35, and the problems were repaired within seven days, ECF No. 21-2 at 27; *see also* ECF No. 1 at 1–2. In addition, ECI staff promptly contacted the medical department after learning that Plaintiff had fallen in his cell and directed him to go to the medical unit for evaluation. ECF No.

21-2 at 26–27, 30–32; ECF No. 21-4 at 7–12. This evidence contradicts any claim that Defendants disregarded a known excessive risk of harm to Plaintiff's health or safety, and the Court grants ECI Defendants' Motion with respect to Plaintiff's Eighth Amendment claim on this ground as well.

        **2.      Due Process Claim**

Finally, to the extent Plaintiff alleges that his personal property was destroyed as a result of the leak, he fails to state a constitutional due process claim. Claims of negligent deprivation of property by a prison official do not implicate the Due Process Clause. *See Daniels v. Williams*, 474 U.S. 327, 332, 335–36 (1986) (holding that "the Due Process Clause is simply not implicated by a *negligent* act of an official causing unintended loss of or injury to life, liberty, or property" (emphasis in original)). A claim of intentional deprivation of property by a prison official also would not state a constitutional due process claim, provided that the prisoner has access to an adequate post-deprivation remedy. *Hudson v. Palmer*, 468 U.S. 517, 533 (1984) (concluding that "intentional deprivations do not violate [the Due Process] Clause provided, of course, that adequate state post-deprivation remedies are available"); *Tydings v. Dep't of Corr.*, 714 F.2d 11, 12 (4th Cir. 1983) (finding that Virginia law provides for an adequate post-deprivation remedy). The right to seek damages and injunctive relief in Maryland courts in a tort action constitutes an adequate post-deprivation remedy for inmates in Maryland prisons. *See Hawes v. Foxwell*, No. DKC-17-2598, 2018 WL 2389060, at *4 (D. Md. May 25, 2018) (noting that the Maryland Tort Claims Act and the Inmate Grievance Office provide adequate post-deprivation remedies). Thus, the claim that ECI Defendants allowed Plaintiff's property to be destroyed does not state a constitutional claim for relief. *See Hawes*, 2018 WL 2389060, at *4 (holding that even if the plaintiff's "personal property was intentionally destroyed . . . such a

claim does not rise to a constitutional violation:), and ECI Defendants' Motion is granted as to that claim as well.

For the foregoing reasons,[5] ECI Defendants are entitled to summary judgment.[6]

### B.      Motion for Appointment of Panel Counsel

Following the filing of ECI Defendants' dispositive motion, Plaintiff filed a Motion for Appointment of Panel Counsel claiming that he is indigent, is incarcerated, has limited access to the library, is not trained in the law, and only has a sixth-grade education. ECF No. 26. The Court "may request an attorney to represent any person" proceeding *in forma pauperis* who is "unable to afford counsel." 28 U.S.C. § 1915(e)(1). In civil actions, however, the Court appoints counsel only in exceptional circumstances. *Cook v. Bounds*, 518 F.2d 779, 780 (4th Cir. 1975). There is no "absolute right to appointment of counsel." *See Miller v. Simmons*, 814 F.2d 962, 966 (4th Cir. 1987). The question of whether such circumstances exist in a particular case hinges on the "characteristics of the claim and the litigant." *See Whisenant v. Yuam*, 739 F.2d 160, 163 (4th Cir. 1984), *abrogated on other grounds by Mallard v. U.S. Dist. Ct. for S. Dist. of Iowa*, 490 U.S. 296 (1989). The Court considers "the type and complexity of the case," whether the plaintiff has a colorable claim, and the plaintiff's ability to prosecute the claim. *See id.* Exceptional circumstances include a litigant who "is barely able to read and write," *id.* at 162, or clearly "has a colorable claim but lacks the capacity to present it[,]" *Berry v. Gutierrez*, 587 F.Supp.2d 717, 723 (E.D. Va. 2008), *aff'd sub nom. Berry v. Locke*, 331 F. App'x 237 (4th Cir.

---

[5] Moreover, Plaintiff does not attribute any specific action or inaction on Warden West's part that resulted in a constitutional violation. *Trulock v. Freeh*, 275 F.3d 391, 402 (4th Cir. 2001) (stating that liability under § 1983 attaches only upon personal participation by a defendant in the constitutional violation). To the extent Plaintiff intends to sue Warden West in his capacity as the ECI officers' supervisor, he cannot succeed. *See Love-Lane v. Martin*, 355 F.3d 766, 782 (4th Cir. 2004) (holding that there is no respondeat superior liability under § 1983).

[6] In light of this ruling, the Court need not address ECI Defendants' argument that Plaintiff failed to exhaust administrative remedies.

2009).

After reviewing Plaintiff's filings in this case, the Court finds that he has adequately presented his claims, and, as his case is not proceeding, appointment of counsel is not warranted. The Court, therefore, denies Plaintiff's Motion.

## IV. CONCLUSION

ECI Defendants' Motion to Dismiss or, in the Alternative, Motion for Summary Judgment, ECF No. 21, is granted, Plaintiff's claims against C.O. Washington and Dr. Clem are dismissed without prejudice, and his Motion for Appointment of Panel Counsel, ECF No. 26, is denied.

A separate Order follows.

  August 3, 2021  
Date

/s/  
GEORGE J. HAZEL  
United States District Judge